```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------
                                               :
  ROBERT CAMARANO,                             :
                                               :          16cv2095
                        Petitioner,            :
                                               :          MEMORANDUM & ORDER
            -against-                          :
                                               :
  T. GRIFFIN, SUPERINTENDENT,                  :
   GREEN HAVEN CORR. FACILITY,                 :
                                               :
                        Respondent.            :
                                               :
-----------------------------------------------
```

WILLIAM H. PAULEY III, Senior United States District Judge:

Petitioner pro se Robert Camarano seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions for second-degree murder and third-degree criminal mischief. In his initial petition, Camarano alleged a denial of due process resulting from delays in perfecting his direct appeal. In a supplemental brief, Camarano refocuses his challenge, claiming that he was overmedicated at trial and therefore incompetent and incapable of representing himself. In that supplemental filing, Camarano also asserts a claim of actual innocence. For the following reasons, this Court denies Camarano's application for a writ of habeas corpus.

## BACKGROUND

In May 2010, a New York County jury convicted Camarano of second-degree murder and third-degree criminal mischief in connection with the killing of his girlfriend Michelle Hyams. (Answer and Appendix Opposing Petition for a Writ of Habeas Corpus, ECF No. 14 ("Answer"), ¶¶ 2, 6.) The trial court sentenced Camarano to consecutive terms of 25

1

years to life imprisonment on the murder conviction and two to four years imprisonment on the criminal mischief conviction. (Answer ¶ 6.)

In June 2010, Camarano appealed his convictions to the Appellate Division, First Department, arguing that the trial court erred in permitting him to proceed pro se because it had not conducted a searching inquiry. (Answer, Ex. A; Supplemental Answer and Appendix Opposing Petition for a Writ of Habeas Corpus, ECF No. 45 ("Supplemental Answer"), Ex. G.) Camarano further claimed—in a pro se supplemental brief to the Appellate Division—that he was addicted to narcotics before, during, and after trial, rendering him incapable of representing himself and incompetent to stand trial. (Supplemental Answer, Ex. I.) In that same supplemental brief, Camarano argued that he was actually innocent of the murder and that he had been prejudiced by excessive appellate delay. (Supplemental Answer, Ex. I.) The Appellate Division appointed the Legal Aid Society ("Legal Aid") to serve as Camarano's appellate counsel. (Answer, Exs. A, C.)

That same month, Camarano also filed pro se motions in the trial court to set aside the verdict pursuant to New York Criminal Procedure Law ("CPL") §§ 330.30 and 440.10. (Answer, Exs. D, F.) In those motions—and in an accompanying addendum to his § 440.10 motion—Camarano made a series of claims, most notably that he was "compelled" by the state judge to represent himself pro se at trial and that he was "under the influence of several powerful narcotic medications throughout his entire trial." (Answer, Exs. D, F, G.) The trial judge denied Camarano's § 330.30 motion at sentencing, (Answer, Ex. E), and denied his § 440.10 motion in a separate decision issued in February 2011, (Answer, Ex. L). In that decision, the trial court ruled that most, if not all of the issues raised in the § 440.10 motion were matters of record and on appeal to the First Department. (Answer, Ex. L.) The trial judge also determined that the facts

asserted by Camarano were "unsupported by other evidence" and there was "no reasonable possibility" that his allegations were true. (Answer, Ex. L.) Camarano did not seek leave to appeal the denial of his § 440.10 motion.[1]

In September 2012, Camarano requested that the Appellate Division replace Legal Aid as counsel, claiming that Legal Aid was neglecting his appeal and had failed to investigate his claim that two police officers actually committed the murder for which he was convicted. (Answer, Ex. O.) Legal Aid responded that the delays were attributable to its inability to obtain the complete trial record.[2] (Answer, Ex. P.) Nevertheless, in December 2012, the Appellate Division granted Camarano's motion and substituted the Center for Appellate Litigation ("CAL") in place of Legal Aid. (Answer, Ex. Q.) Five months later, Camarano moved to relieve CAL as counsel, once again claiming that appellate counsel did not investigate his claim that police detectives committed the murder. (Answer, Ex. R.) This time, the Appellate Division denied Camarano's motion, (Answer, Ex. S), and CAL continued to work on Camarano's appeal, (Answer, Ex. W). Undeterred, in May 2015 Camarano renewed his application to displace CAL as his appellate counsel. (Answer, Ex. DD.) In September 2015, the Appellate Division granted Camarano's application and replaced CAL with the Office of the Appellate Defender ("OAD"). (Answer, Ex. FF.)

---

[1] While his § 440.10 motion was pending in the trial court, Camarano sought leave to appeal that motion to the Appellate Division. (Answer, Exs. H, I.) On October 14, 2010, the Appellate Division denied Camarano's request for leave to appeal because the § 440.10 motion was sub judice in the trial court. (Answer, Ex. J.)

[2] Camarano's trial transcript was incomplete due to a court reporter's errors during Camarano's trial. See generally James C. McKinley, Jr., Stenographer, Fired Over Drinking Problem, Left Headaches for Appellate Courts, N.Y. TIMES, April 3, 2014, at A20.

In March 2016, Camarano filed this § 2254 proceeding pro se, alleging that the delay and inadequacies of his appellate counsel denied him due process of law.³ (Petition for Writ of Habeas Corpus, ECF No. 1 ("Petition"), at 7.) After commencing this habeas proceeding, Camarano moved the Appellate Division to relieve OAD as his counsel. (June 2017 Letter from Ross Mazer, ECF No. 26 ("June 2017 Mazer Letter").) The Appellate Division granted that application and appointed Steven A. Feldman, Esq. to represent Camarano on appeal. (June 2017 Mazer Letter.) Two months later, in June 2017, Camarano elected to proceed pro se and moved to relieve Feldman. (August 2017 Letter from Ross Mazer, ECF No. 28.)

On September 19, 2017, this Court denied Camarano's petition because his direct state appeal was still pending and he had failed to exhaust his claims in state court. (See generally Opinion & Order, ECF No. 29.) Camarano appealed this Court's ruling to the Second Circuit. (ECF No. 31.)

In December 2018, the Appellate Division unanimously affirmed Camarano's convictions and sentence. See generally People v. Camarano, 87 N.Y.S.3d 880 (Mem) (N.Y. App. Div. 2018). The court upheld the trial court's decision to allow Camarano to proceed pro se because the trial judge conducted a "thorough colloquy at which the court ensured that [Camarano] was aware of the risks and disadvantages of representing himself and of the important role of a lawyer." Camarano, 87 N.Y.S.3d at 880. The Appellate Division further found that Camarano's pro se claims—including his claims of overmedication and impairment

---

³ Camarano made several different arguments in his initial habeas petition, but stated that he was "limit[ing] [his] petition for writ of Habeas Corpus to the excessive, inordinate, prejudicial and deliberate six years delay of [his] direct State appeal." (Petition, at 13.)

4

during trial and of actual innocence—were unreviewable on direct appeal because they relied on factual claims outside the record. Camarano, 87 N.Y.S.3d at 880–81. Finally, the Appellate Division "considered [Camarano's] constitutional claims regarding delays in the perfection of his appeal, and [found] them without merit." Camarano, 87 N.Y.S.3d at 881. In February 2019, the New York Court of Appeals denied Camarano's request for leave to appeal. People v. Camarano, 122 N.E.3d 1139 (Table) (N.Y. 2019).

After this Court issued its September 19, 2017 Opinion & Order, Camarano proceeded to exhaust his state court remedies. On November 1, 2019, the Second Circuit vacated this Court's dismissal for failure to exhaust and remanded the matter for further proceedings. Camarano v. Griffin, 782 F. App'x 82, 83 (2d Cir. 2019) (summary order). In December 2019, this Court directed both parties to file supplemental briefing to address the merits of Camarano's habeas petition. (ECF No. 36).

In his initial habeas petition, Camarano claimed that he was denied due process because of his appellate counsels' delay in perfecting his appeal. (See generally Petition.) But the thrust of Camarano's argument in his supplemental brief is that he was overmedicated at trial, and therefore incompetent and incapable of representing himself. (Supplemental Br. for Petitioner, ECF No. 56 ("Supplemental Br."), at 5, 7–9, 14, 18, 20.) Camarano also asserts in this brief that he is actually innocent. (Supplemental Br., at 4–5, 10, 14.) The Government counters that (1) Camarano's appellate delay claim was rejected by the Appellate Division, a determination entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214; (2) Camarano procedurally defaulted on his incompetence and lack of capacity claim; and (3) Camarano's actual innocence claim is unexhausted and not cognizable on federal habeas corpus review.

DISCUSSION

I.   Legal Standard

Section 2254 provides that a "district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254 . . . is 'part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.'" Jackson v. Conway, 763 F.3d 115, 132 (2d Cir. 2014) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

"A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena." Jackson, 763 F.3d at 132. First, district courts are instructed not to grant habeas applications unless "the applicant has exhausted the remedies available in the courts of the State." § 2254(b)(1)(A). Next, "[s]hould the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." Jackson, 763 F.3d at 132 (citing Wainwright v. Sykes, 433 U.S. 72, 82–84 (1977)). Further, "[i]f the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court.'" Jackson, 763 F.3d at 132 (quoting 28 U.S.C. § 2254(d)(1)–(2)). Camarano's claims implicate each of these doctrines.

Because Camarano is proceeding pro se, this Court is required to construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted).

II.     Camarano's Appellate Delay Claim

In affirming his convictions on direct appeal, the Appellate Division found Camarano's appellate delay claim to be without merit. Camarano, 87 N.Y.S.3d at 881. In turn, the New York Court of Appeals denied Camarano's request for leave to appeal. Camarano, 122 N.E.3d at 1139. Because Camarano's appellate delay claim was adjudicated on the merits, it must be analyzed under 28 U.S.C. § 2254(d). See Bierenbaum v. Graham, 607 F.3d 36, 48–49, 48 n.1 (2d Cir. 2010) (determining that a claim was "adjudicated on the merits" by New York State courts when the Appellate Division "examined defendant's remaining contentions and f[ound] them unavailing" and the Court of Appeals "denied leave to appeal without explanation").

Specifically, § 2254(d)(1) is implicated in this proceeding. "The starting point for cases subject to § 2254(d)(1) is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." Marshall v. Rodgers, 569 U.S. 58, 61 (2013) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). In conducting this analysis, courts must look only to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Next, the habeas court must determine whether "the state court's decision was contrary to or an unreasonable application of that clearly established [Supreme Court] precedent." Jackson, 763 F.3d at 134 (citing Yarborough v. Alvarado, 541 U.S. 652, 663

(2004)). Thus, if there is no Supreme Court rule governing a petitioner's claim, a court may not grant habeas relief. See Wright v. Van Patten, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." (quotation marks omitted)).

Here, there is no clearly established federal law governing Camarano's appellate delay claim because the Supreme Court has never recognized a right to a speedy appeal. See Cody v. Henderson, 936 F.2d 715, 718 (2d Cir. 1991) ("The Supreme Court has not yet directly addressed the issue of whether the Constitution guarantees a speedy criminal appeal, once an opportunity for an appeal is provided.") Indeed, district courts have held that there is "no clearly established Supreme Court law, within the meaning of AEDPA, that expands the Sixth Amendment's guarantee of a speedy trial to ensure criminal defendants a speedy appeal." See, e.g., Brightley v. Heath, 2015 WL 10487766, at *29 (S.D.N.Y. Jan. 6, 2015) (quotation marks omitted), report and recommendation adopted, 2016 WL 1060326 (S.D.N.Y. Mar. 15, 2016). Since there is no clearly established federal law governing Camarano's appellate delay claim, the state court's decision could not have been "contrary to" or "an unreasonable application of" such a law.

Camarano argues that the Second Circuit has recognized a due process right to a timely appeal. (Petition, at 13–15 (citing Simmons v. Reynolds, 898 F.2d 865 (2d Cir. 1990); Brooks v. Jones, 875 F.2d 30 (2d Cir. 1989)).) But those decisions preceded the enactment of AEDPA, which requires habeas courts to look exclusively to Supreme Court precedent when determining if a clearly established federal law governs a petitioner's claim. Because the Supreme Court has not recognized a due process right to a speedy appeal, the Second Circuit's recognition of such a right is irrelevant under § 2254(d)(1).

Further, Camarano's reliance on <u>Barker v. Wingo</u>, 407 U.S. 514 (1972) is misplaced. (Supplemental Br., at 11–13.) There, the Supreme Court focused its analysis on whether the Sixth Amendment's right to a speedy trial, not a speedy appeal, was violated. <u>Barker</u>, 407 U.S. at 519–36. Other circuits have explicitly rejected the idea that <u>Barker</u> recognizes a constitutional right to a speedy appeal. <u>See, e.g.</u>, <u>Hayes v. Ayers</u>, 632 F.3d 500, 523 (9th Cir. 2011) ("[T]he right to a speedy trial [does not] 'clearly extend' to the appellate context."). Further, the Supreme Court has held that delays in appellate litigation should not be analyzed under <u>Barker</u>. <u>See</u> <u>Betterman v. Montana</u>, 136 S. Ct. 1609, 1615 (2016) ("Adverse consequences of postconviction delay . . . are similarly outside the purview of the Speedy Trial Clause.").

Accordingly, because the Supreme Court has never recognized a due process right to a speedy appeal, this Court defers to the Appellate Division's denial of Camarano's appellate delay claim on the merits.

III.     <u>Camarano's Overmedication Claim</u>

In his supplemental habeas brief, Camarano argues primarily that he was overmedicated during trial, rendering him incompetent and incapable of representing himself. He asserts that the state prosecutor "took advantage" of him in his overmedicated condition. (Supplemental Br., at 15.) But Camarano has procedurally defaulted on this claim.

District courts may not grant habeas applications unless "the applicant has exhausted the remedies available in the courts of the State." § 2254(b)(1)(A). This "exhaustion doctrine" finds its origins in "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." <u>Daye v. Att'y Gen. of State of N.Y.</u>, 696 F.2d 186, 191 (2d Cir. 1982); <u>see also</u> <u>Galdamez v. Keane</u>, 394 F.3d 68, 72 (2d Cir. 2005)

9

(explaining the history and rationale of this requirement).  Exhaustion "requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 276–77 (1971)).  Further "the habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claim." Anderson, 459 U.S. at 6 (quotation marks omitted).

When a petitioner fails to exhaust a claim in state court and the claim then becomes procedurally barred in state court, "federal habeas courts also must deem the claim[] procedurally defaulted."  Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  Thus, if a petitioner does not fairly present a claim in state court and that claim can no longer be timely presented in state court, the claim is procedurally defaulted.  See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (finding procedural default where petitioner failed to present federal habeas claims to the state court and "the time for filing such a petition ha[d] long passed").  Further, "if a petitioner defaulted his federal claim[] in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim[] is barred."  Messiah v. Duncan, 435 F.3d 186, 195 (2d Cir. 2006) (quotation marks omitted).  And a procedurally defaulted claim must be denied by a federal court unless petitioner can show "cause and actual prejudice" or demonstrate that he is actually innocent.  See Coleman v. Thompson, 501 U.S. 722, 748 (1991).

Camarano has procedurally defaulted on his claim of incompetence and lack of capacity due to overmedication.  Although Camarano raised a similar argument in his CPL § 440.10 motion, he did not seek leave to appeal the denial of that motion.  Camarano's failure to seek leave to appeal resulted in a failure to exhaust this claim in state court.  See Brewer v. Cunningham, 2018 WL 6705707, at *13 (S.D.N.Y. Feb. 8, 2018), report and recommendation

10

adopted, 2018 WL 6697991 (S.D.N.Y. Dec. 20, 2018) (deeming claims in a § 440.10 motion exhausted because petitioner "failed to raise them in his application for leave to appeal"). Further, any application for leave to appeal the denial of Camarano's § 440.10 motion is time-barred. See CPL § 460.10 (mandating that an appeal of a § 440.10 motion must be filed within 30 days of service of the trial court's decision on petitioner). Because Camarano is procedurally barred from seeking leave to appeal, he has procedurally defaulted on this claim.

Camarano's procedural default is not overcome by reiterating his claim of incompetence and lack of capacity in his pro se state court supplemental brief filed in support of his direct appeal. Indeed, the Appellate Division, in denying Camarano's appeal, noted that his "pro se claims, including his claim that his ability to represent himself was impaired by drugs, [were] unreviewable on direct appeal because they rest[ed] on factual claims outside the record."[4] Camarano, 87 N.Y.S.3d at 880–81. The proper avenue to raise this claim is to expand the record on the § 440.10 motion. See Espinal v. Lee, 2014 WL 5643418, at *8 (S.D.N.Y. Nov. 3, 2014) (recognizing that the Appellate Division "found that Petitioner's [claim] would require a CPL 440.10 motion to expand the record" (quotation marks omitted)). While Camarano had the opportunity to expand the record on his § 440.10 motion, he failed to do so. The trial judge denied his § 440.10 motion in part because he "unjustifiably failed to adduce" the "additional allegations supporting [his] claims" under CPL § 440.10(3)(a). (Answer, Ex. L.) Because courts in this District have recognized § 440.10(3)(a) as an adequate and independent state ground, see

---

[4] It is notable that Camarano's habeas claim of incompetence and lack of capacity differs from his claim on direct appeal that the trial court did not conduct a searching inquiry during his waiver of counsel as to whether he was medicated or drugged. That argument was procedural, and the Appellate Division denied it because the trial court conducted a sufficient searching inquiry. Camarano, 87 N.Y.S.3d at 880. But Camarano's argument in this habeas proceeding is substantive: he claims that he was too drugged and overmedicated to adequately represent himself.

Chrysler v. Guiney, 14 F. Supp. 3d 418, 453–54 (S.D.N.Y. 2014), federal habeas review of Camarano's claim is barred, see Messiah, 435 F.3d at 195.

To overcome this procedural default, Camarano must show either cause and prejudice or demonstrate actual innocence. Camarano has not made any showing of cause or prejudice related to his failure to timely exhaust his claim in state court. Further, Camarano's claim that he is actually innocent is meritless. The evidence of his guilt is overwhelming. Accordingly, Camarano procedurally defaulted on this claim.

Even if Camarano did not procedurally default on this claim, he would most certainly fail on the merits. In denying his § 440.10 motion, the trial judge noted that Camarano had "insisted on his right to represent himself" early on in the proceedings. (Answer, Ex. L.) Despite the trial judge's numerous attempts to discourage Camarano from representing himself, Camarano repeatedly expressed his desire to proceed pro se. (Answer, Ex. L.) The trial judge further determined that "nothing in the proceedings evidenced that [Camarano] was suffering from . . . impairment by drug use which rendered him incompetent." (Answer, Ex. L.) As the record indicates, Camarano was not only competent and fully capable of representing himself, but insisted on doing so despite repeated warnings from the trial judge.

IV.     Camarano's Actual Innocence Claim

Finally, Camarano now claims that he is actually innocent. Camarano maintains that two police detectives and an emergency medical technician murdered Michelle Hyams, and that the trial prosecutor—along with other members of the New York County District Attorney's office—participated in a massive cover-up scheme. (Supplemental Br., at 3–5.) But Camarano has not exhausted his actual innocence claim in state court, and—in any event—such a claim is not cognizable on habeas review.

In his state court pro se supplemental brief in support of his direct appeal, Camarano raised an actual innocence claim supported by the same conspiracy theories alleged here. Camarano asserts that the Appellate Division "inexplicably, unreasonably and in contravention of constitutional law," failed to consider this claim. (Supplemental Br., at 14.) But in denying Camarano's direct appeal, the Appellate Division determined that his pro se claims—including his claim of actual innocence—were "unreviewable on direct appeal because [they] rest[ed] on factual claims outside the record." Camarano, 87 N.Y.S.3d at 880–81.

Because Camarano's actual innocence claim relies on evidence that was not part of the trial record, it should have been raised as part of an expanded record in a § 440.10 motion. Camarano filed a § 440.10 motion in June 2010, but failed to advance any claim of actual innocence. Thus, he has not exhausted his claim of actual innocence in state court. While this Court could treat Camarano's petition as mixed, see Zarvela v. Artuz, 254 F.3d 374, 380 (2d Cir. 2001), "AEDPA permits a habeas court to reject a claim on the merits notwithstanding the fact that it is unexhausted," Aparicio, 269 F.3d at 90 n.5.

"The Supreme Court has recognized that a 'credible' and 'compelling' claim of actual innocence may provide a 'gateway' through other procedural barriers to habeas relief." Rivas v. Fischer, 687 F.3d 514, 517 (2d Cir. 2012) (quoting Schlup v. Delo, 513 U.S. 298, 315 (1995)). But, importantly, the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013); see also Herrera v. Collins, 506 U.S. 390, 404–05 (1993) ("We have never held that [habeas relief] extends to freestanding claims of actual innocence."). Indeed, "[d]istrict courts, following Herrera, have repeatedly held that a 'freestanding' claim of actual innocence based on newly discovered evidence, i.e., one unaccompanied by an allegation

13

of some constitutional error, does not provide a basis for habeas relief." Pimentel v. United States, 2008 WL 2151796, at *7 (S.D.N.Y. May 21, 2008) (collecting cases). Accordingly, this Court rejects Camarano's actual innocence claim because it is not appropriate for review in this habeas proceeding.

## CONCLUSION

For the foregoing reasons, Camarano's habeas petition is denied. Because Camarano has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of Court is directed to terminate all pending motions and mark this case closed. Chambers staff will mail a copy of this Memorandum & Order to Camarano.

Dated: March 25, 2021　　　　　　　　　　SO ORDERED:
　　　　　New York, New York

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　WILLIAM H. PAULEY III
　　　　　　　　　　　　　　　　　U.S.D.J.

14